21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Orra MITCHELL, Plaintiff (92-5465/5596)
Plaintiff-Appellant/Cross-Appellee (92-5706/5707),
v.
HALLDEN MACHINE COMPANY, Defendant-Appellee (92-5465),
Cross-Appellant (92-5596 5706/5707),
Armco, Inc., Intervenor-Appellant (92-5465/5706);
Cross-Appellee (92-5596/5707).
 Nos. 92-5465, 92-5596, 92-5706 and 92-5707.
 United States Court of Appeals, Sixth Circuit.
 March 24, 1994.
 
 Before: JONES and NORRIS, Circuit Judges; CLELAND, District Judge.*
 PER CURIAM.
 
 
 1
 This matter comes to us after a jury awarded plaintiff, Orra Mitchell, $500,000 in compensatory damages as the result of an industrial accident. The dispositive issue on appeal concerns the propriety of interrogatories submitted to the jury. Because two of the interrogatories inaccurately reflected the applicable Kentucky law, we affirm the jury's award of damages but reverse the judgment of the trial court insofar as it apportions payment of that award.
 
 I.
 
 2
 Plaintiff brought this diversity action against defendant, Hallden Machine Company ("Hallden"), after severely injuring his hand on March 23, 1988. At the time, plaintiff worked for intervening plaintiff, Armco, Inc. ("Armco").
 
 
 3
 Hallden designed, built, and sold a device known as the "Hallden Flying Shear." Plaintiff's duties for Armco included operating this shear, which was used to cut sheet metal. On the evening of the accident, he was manually cleaning the shear's rollers with a hand-held device. When the rollers began to move unexpectedly, plaintiff's hand became caught and was crushed. After attempts to save the hand proved unsuccessful, it was amputated.
 
 
 4
 Since his injury, plaintiff has been unable to return to full-time employment, and Armco has paid him workers' compensation benefits and covered his medical expenses. Armco intervened as plaintiff's subrogee in an attempt to recoup these costs.
 
 
 5
 Plaintiff's complaint named Hallden as the sole defendant,[1] and asserted that the company was strictly liable for the manufacture of the shear, which plaintiff alleged was marketed in a defective condition and was unreasonably dangerous to a user. Hallden did not file a counterclaim or third-party claim against either plaintiff or Armco.
 
 
 6
 The case was tried to a jury in 1991. At the close of the evidence, the case was submitted in the form of five interrogatories:
 
 
 7
 1. Was the Hallden Flying Shear, as manufactured and put on the market by Hallden Machine Company, in a defective condition and unreasonably dangerous to a user whom Hallden Machine Company should have expected to use or be exposed to it, and was this defective condition a substantial cause of the accident and injury to Mr. Mitchell[?]
 
 
 8
 2. It was Mr. Mitchell's duty in using the Hallden Flying Shear to exercise ordinary care for his own safety. Did Mr. Mitchell fail to comply with this duty, and was such failure a substantial factor in causing the accident and injury to him?
 
 
 9
 3. In finding for the plaintiff, you will determine from the evidence the sum or sums of money that will fairly compensate Mr. Mitchell for such [pain and suffering, lost wages, and loss of future income] as you believe he has sustained directly by reason of the defective condition of the Hallden Flying Shear.
 
 
 10
 4. It was the duty of Armco, Inc. to exercise ordinary care and to furnish Mr. Mitchell with a reasonably safe place to work. Did Armco Inc., or its employee Mr. Kellough, fail to comply with the above duty, and was this failure a substantial factor in causing the accident and injury to Mr. Mitchell?
 
 
 11
 5. You will determine from the evidence and indicate in the following blank spaces what percentage of the injury to Mr. Mitchell was attributable to each of the following parties [Armco and Hallden]. In determining the percentages of fault, you shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between his conduct and the damages claimed by Mr. Mitchell.
 
 
 12
 The jury responded by finding that Hallden had placed a defective, dangerous product on the market and that plaintiff had exercised due care. In response to the third interrogatory, it awarded compensatory damages in the amount of $500,000 for pain and suffering and loss of future income. No award was made for lost wages.
 
 
 13
 As explained below, the jury should not have been required to go further. It did so, however, and found that Armco had failed to supply a reasonably safe place to work. As a result of this failure, the jury assigned ninety-seven percent of the fault leading to plaintiff's injury to Armco and three percent to Hallden.
 
 
 14
 The trial court therefore reduced the amount owed to Armco by Hallden from $148,182.31[2] to $4,445.47.
 
 II.
 
 15
 As the product liability law of Kentucky stood at the time of Mitchell's accident,[3] contributory negligence on the part of the plaintiff was a complete bar to recovery: "We hold that K.R.S. 411.320(3), by its plain meaning, provides that contributory negligence of a claimant which is a substantial cause of the occurrence that caused injury or damage to him is an absolute bar to recovery of damages resulting from such injury." Reda Pump Co., Div. of TRW v. Finck, 713 S.W.2d 818, 820 (Ky.1986).[4]
 
 
 16
 In response to the court's interrogatories, the jury began by finding that Hallden was liable to plaintiff under a theory of strict liability and that plaintiff's recovery was not barred by a failure to exercise ordinary care for his own safety. Then, in answer to Interrogatory No. 3, the jury found that $500,000 was the sum of money that would compensate plaintiff for damages he "sustained directly by reason of the defective condition of the Hallden Flying Shear." The fourth interrogatory introduced the consideration of Armco's negligence, and the fifth interrogatory asked the jury to determine "percentages of fault" as between Armco and Hallden.
 
 
 17
 Submission of the last two interrogatories was improper. Hallden did not raise the question of apportionment of any recovery due plaintiff until late in the trial of the case. Because Hallden had not in its pleadings asserted an affirmative claim for relief against Armco, or claimed entitlement to apportionment, the case had not been tried in response to those claims. In its answer to Armco's complaint, Hallden pointed out that the complaint was "derivative of all claims of plaintiff, Orra Mitchell, and all defenses asserted against Orra Mitchell ... are hereby reasserted and constitute a bar to the Intervening Complaint of Armco...." The answer went on to assert that "[a]ny injuries ... to plaintiff, to which intervening plaintiff claims that it is subrogated, came about by reason of the failure of intervening plaintiff to furnish plaintiff a reasonably safe work place and ... by reason of negligent acts or omissions of intervening plaintiff, requiring the dismissal of the Intervening Complaint against this defendant." No mention was made of setoff or apportionment. Instead, Hallden seemed to be asserting that Armco's contributory negligence was a complete bar to its claim.
 
 
 18
 Under Kentucky's workers' compensation system, Armco's only basis for recovery derived from its position as a subrogee of plaintiff. It could recover only if plaintiff did. Ky.Rev.Stat.Ann. Sec. 342.700 (Baldwin 1986); Waters v. Transit Auth., 799 S.W.2d 56, 58 (Ky.Ct.App.1990). It was not for Armco to prove that Hallden was at fault; since Armco's right to recover was based upon a statutory policy against plaintiff receiving a double recovery, it was required to show only that it had paid benefits to plaintiff. Under the circumstances, the only contributory negligence that was relevant was plaintiff's. When Hallden finally asked for the apportionment interrogatories, it shifted to an unspecified theory, which seemed to incorporate aspects of setoff, contribution, or indemnification. It is difficult to characterize Hallden's theory. However, one thing is clear: the theory was flawed. The result achieved could only have been accomplished by: (1) a kind of "reverse subrogation," as previously noted; or (2) enforcement of a counterclaim by Hallden against Armco that did not exist and that could not have properly existed because it would have sought to apportion fault in a strict liability case.
 
 
 19
 Accordingly, under the posture of this case, Hallden was not entitled to have any negligence of Armco offset against any portion of plaintiff's recovery, including the amount to which Armco was subrogated by the statute. Armco was entitled to the entire amount it paid in workers' compensation benefits and for medical treatment, which the district court found to be $148,182.31. Although it may be argued that it is unfair to saddle Hallden with the entire burden of compensating plaintiff for his injury where the jury believed Armco was the chief culprit, we are not called upon to decide whether a proper legal mechanism should or does exist that would permit Hallden to shift to Armco a share of the damages due plaintiff. What we hold is that the procedure followed by the trial court in this case, at Hallden's urging, was not a proper mechanism to accomplish that objective.
 
 
 20
 We turn next to the jury's decision not to award Mitchell any compensatory damages for "wages or income lost during such time as it was necessary for plaintiff to be off work." The district court agreed that the verdict "appear[ed] to be inconsistent." However, it affirmed the award because neither Mitchell nor Armco objected to this inconsistency before the jury was discharged.
 
 
 21
 We agree that the inconsistency of the jury verdict should have been apparent to the parties before the jury was discharged. Failure to object to such an inconsistency in a timely manner constitutes a waiver of the objection. Tennessee Consol. Coal Co. v. United Mine Workers, 416 F.2d 1192 (6th Cir.1969), cert. denied, 397 U.S. 964 (1970). Furthermore, the district court correctly noted that the jury was confronted with conflicting evidence concerning plaintiff's earning ability following the accident. The jury was not required to resolve this conflict in plaintiff's favor.
 
 
 22
 Finally, although the parties advance other arguments on appeal, after careful review we conclude that they are without merit.
 
 III.
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part, and this cause is remanded to the district court to enter a judgment in favor of plaintiff in the amount of $500,000.00, indicating that Armco is entitled to $148,182.31 of that amount.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Although the complaint originally included "unnamed defendants," these entities were never identified. No claim was filed against Armco because it had paid workers' compensation benefits to Mitchell, which absolves an employer of additional liability under Kentucky law. Ky.Rev.Stat.Ann. Sec. 342.690 (Baldwin 1986)
 
 
 [2]
 The trial court found that Armco had paid plaintiff workers' compensation benefits of $62,847.94 and medical expenses of $85,334.37
 
 
 [3]
 Effective July 15, 1988, Kentucky adopted comparative fault principles in the product liability context. Ky.Rev.Stat.Ann. Sec. 411.182 (Baldwin 1991). This statute is not applied retroactively, however, and thus does not affect the outcome of this case. Koching v. Int'l Armament Corp., 772 S.W.2d 634 (Ky.1989)
 
 
 [4]
 Ky.Rev.Stat. Sec. 411.320(3) reads:
 In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective.